United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT JOHN VINCENT, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>DANIEL M. RESER, et al.,<br><br>　　　　Defendants.<br>_____/ | No. C 11-03572 CRB<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND NAMED PLAINTIFFS INCENTIVE AWARD; GRANTING MOTION FOR GOOD FAITH SETTLEMENT APPROVAL AND INDEMNITY AND CONTRIBUTION BAR** |

　　　　Before the Court are three motions relating to a Proposed Settlement Agreement that resolves the putative class action brought by Albert John Vincent and Raymond Tormaschy (collectively "Plaintiffs") against Daniel Reser, Fiduciary Services, Inc. ("FSI"), Linda Spear, the Estate of Joel Spear, the Joel and Linda Spear Family Trust, Southern California Pipeline Construction, Inc. ("SCPC"), and First Bankers Trust Services, Inc. ("FBTS") (collectively "Defendants"): (1) Plaintiffs' Motion for Final Approval of Class Action Settlement (dkt. 69); (2) Class Counsel's Motion for Award of Attorneys Fees and Costs and Named Plaintiffs Incentive Award (dkt. 65); and (3) Defendants' Motion for Good Faith Settlement Approval and Indemnity and Contribution Bar Order (dkt. 73). The Spears' former financial advisors, BCC Capital Partners, LLC, Diane Bixler, Michael Harden, Phillip

Choo, Glenn M. Gelman, and Gelman & Associates (collectively "Opposition")[1] oppose Defendants' Good Faith Motion. See generally Good Faith Opp'n; Good Faith Joinder (dkt. 83).

Because the Proposed Settlement is fair, reasonable, and adequate to Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court GRANTS Plaintiffs' Motion for Final Approval. The Court also GRANTS Class Counsel's request for attorneys' fees in the amount of $1,281,250.00, litigation costs in the amount of $103,063.96, and named plaintiffs incentive awards of $5,000.00 each, to be deducted from the Settlement Amount. Finally, because the Opposition has failed to carry its burden of demonstrating a lack of good faith, the Court GRANTS Defendants' Good Faith Motion.

## I. BACKGROUND

Joel Spear[2] and Defendant Linda Spear, co-trustees of the Joel and Linda Spear Family Trust, owned 100% of the outstanding issued stock of SCPC. On November 21, 2007, the Spears entered into a Stock Purchase Agreement (the "November 2007 Transaction") whereby the Spear Family Trust sold 100% of SCPC's stock to the Southern California Construction, Inc. Employee Stock Ownership Plan ("ESOP") for a total purchase price of $35 million. Defendant Reser, Trustee of the ESOP, represented the ESOP in the November 2007 Transaction. Plaintiffs allege the ESOP paid more than fair market value for the stock of Defendant SCPC and did not receive the benefit of certain insurance policies that were supposed to be purchased for the ESOP's protection as part of the November 2007 Transaction. Compl. (dkt. 1) ¶¶ 56-58. Plaintiffs also allege Joel Spear and his advisors[3] inflated SCPC's financial projections in order to increase the share price paid by the ESOP.

---

[1] The Opposition are defendants in a state law securities action stemming from the same underlying events in this case and now pending in the Central District of California, Case No. SACV12-1901 AG (Anx) (the "Securities Action"). See Good Faith Opp'n (dkt. 82) at 1; Feinberg Decl. (dkt. 70), Ex. 2.

[2] Joel Spear died in January 2010. The Estate of Joel Spear is named as a Defendant.

[3] Joel Spear's financial advisors are not parties to this action or the Proposed Settlement Agreement. An Independent Special Trustee, on behalf of the ESOP, is pursuing relief against said financial advisors in the Securities Action. See Feinberg Decl., Ex. 2.

2

United States District Court
For the Northern District of California

1 Compl. ¶ 56. SCPC ceased business operations in 2010, and the SCPC stock owned by the
2 ESOP currently has no value. After the November 2007 Transaction, SCPC terminated
3 Reser as Trustee of the ESOP. Plaintiffs allege Defendant FBTS, the successor Trustee of
4 the ESOP, failed to take necessary steps to protect the ESOP's rights, such as filing claims
5 against the parties responsible for the November 2007 Transaction, including certain advisors
6 to Joel Spear. Id. ¶ 38.

7 Plaintiffs filed this action on July 20, 2011. See id. Plaintiffs allege Defendants
8 Reser, FSI, Estate of Joel Spear, Linda Spear, and SCPC breached their fiduciary duties of
9 prudence and loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), in the November
10 2007 Transaction. Id. ¶¶ 56-57. Plaintiffs also allege these Defendants and Defendant Spear
11 Family Trust engaged in a prohibited transaction under ERISA § 406, 29 U.S.C. § 1106, in
12 the November 2007 Transaction. Id. ¶¶ 66-67. Finally, Plaintiffs allege Defendant FBTS, as
13 successor Trustee of the ESOP, breached its fiduciary duties of prudence and loyalty under
14 ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by failing to pursue claims against the other
15 Defendants arising out of the November 2007 Transaction. Id. ¶ 58.

16 On August 13, 2012, after two full days of mediation, the Parties reached the
17 Proposed Settlement Agreement.[4] Feinberg Decl. ¶ 6. On November 16, the Court issued an
18 order (1) granting Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement;
19 (2) certifying the Class for settlement purposes; (3) approving the form and content of notice
20 to Class Members; (4) directing the mailing of notice; and (5) scheduling the final fairness
21 hearing. See Prelim. Approval Order (dkt. 64).

22 The Settlement Agreement provides that Defendants will pay $5,125,000 to the ESOP
23 in exchange for a release of all claims related thereto. Feinberg Decl., Ex 1 ¶¶ 1.46, 9.1. The
24 release excludes the ESOP's state law securities claims against the Spears' financial advisors.
25 Id. ¶ 9.1. On November 27, 2012, the Special Trustee filed suit against the Spears' financial
26 advisors on behalf of the ESOP, alleging violations of California Securities Laws,

27

28     [4]     A copy of the Settlement Agreement is included as Exhibit 1 to Feinberg's Declaration. Feinberg Decl., Ex. 1.

3

1 Corporations Code §§ 25401, 25504, and 25504.1. <u>See</u> Req. for Judicial Notice, Ex. A.[5] In the Securities Action, the ESOP alleges that the defendant financial advisors conspired with the Defendants in this action, causing the same losses to the ESOP. <u>See</u> id. ¶¶ 20-24.

Pursuant to the Court's Preliminary Approval Order, the Notice was mailed to Class Members on November 21, 2012. Tittle Decl. (dkt 79-1) ¶ 6; <u>see also</u> <u>id.</u> Ex. A. The Settlement Agreement provides for a mandatory, non-opt-out Settlement Class. Feinberg Decl., Ex. 1 ¶ 1.5. January 7, 2013 was the deadline for any Class Members to object to the proposed settlement. Tittle Decl. ¶ 6; <u>see also</u> <u>id.</u> Ex. A. As of January 16, 2013, Class Counsel has received no objections from Class Members. Second Feinberg Decl. (dkt. 79) at 2; <u>see also</u> <u>id.</u> Ex. 1 at 3.

Additionally, Defendant SCPC retained Nicholas Saakvitne as an Independent Fiduciary to review the terms of the Proposed Settlement. Huss Decl. (dkt. 81) ¶ 3; <u>see also</u> <u>id.</u> Ex A. On January 14, 2013, Saakvitne issued a written determination that the Settlement fully complies with Department of Labor Prohibited Transaction Class Exemption 2003-39, as required by the Settlement Agreement. Huss Decl. (dkt. 81) ¶ 3; <u>see also</u> <u>id.</u> Ex A.

Finally, the Settlement Agreement permits and Defendants now seek a determination from the Court stating that the Settlement is in good faith and that any future claims by non-parties—including the Spears' financial advisors, now defendants in the Securities Action—against Defendants for contribution or indemnity shall be barred. Feinberg Decl., Ex. 1 ¶ 12.1; Good Faith Mot. at 1. Importantly, Defendants have a right to terminate the Settlement Agreement if a good faith settlement determination and bar order is not obtained. Feinberg Decl., Ex. 1 ¶ 12.1.

On January 22, 2013, Gelman, defendant in the Securities Action, filed an opposition to Defendants' Good Faith Motion. <u>See generally</u> Good Faith Opp'n. Also on January 22, 2013, the remaining defendants in the Securities Action joined in the opposition to Defendants' Good Faith Motion. <u>See generally</u> Good Faith Joinder. The Opposition

---

[5] Pursuant to Federal Rule of Evidence 201(b)(2), the Court takes Judicial Notice of the First Amended Complaint in the Securities Action.

United States District Court
For the Northern District of California

contends that, because Defendants have not provided information as to each settling Defendant's individual contribution to the total Settlement and each settling Defendant's financial condition, a good faith determination by the Court is inappropriate. See generally Good Faith Opp'n.

## II. DISCUSSION

### A. Motion for Final Approval of Class Action Settlement

Final approval of a proposed class action settlement will be granted upon a finding that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). However, "[a]pproval under Rule 23(e) of settlements involving settlement classes . . . requires closer judicial scrutiny than approval of settlements where class certification has been litigated." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). A court's determination of whether a proposed settlement complies with Rule 23(e) "necessarily involve[s] a balancing of several factors." Officers for Justice v. Civil Serv. Comm'n of S.F., 688 F.2d 615, 625 (9th Cir. 1982). Specifically, the court should consider the following factors where relevant:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery complete and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[6]

Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (citing Hanlon, 150 F.3d at 1026).

Additionally, where "a settlement agreement is negotiated prior to formal class certification, consideration of these eight Churchill factors alone is not enough." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011). "[S]uch agreements must withstand an even higher level of scrutiny for evidence of collusion." Id. The presence of collusion, by itself, may warrant denial of final approval. See id. at 947-49

---

[6] The Court certified the Class for settlement purposes pursuant to Rules 23(a) and 23(b)(1). See Prelim. Approval Order at 1-2. Thus, factor 3 is not a serious issue for consideration by the Court. Similarly, because no government participant is involved, the Court does not consider factor 7 relevant.

5

(remanding case to consider evidence of collusion). Circumstances indicative of collusion include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." Id. (internal citations omitted).

Here, an evaluation of the relevant Churchill factors indicates that the Proposed Settlement should be approved because it is fair, reasonable, and provides adequate relief to the Class Members. Specifically, the Court finds that the following factors weigh strongly in favor of settlement: (1) the strength of Plaintiffs' case is questionable in light of Defendants' significant defenses; (2) further litigation would be time-consuming, complex, and expensive for both parties; (3) given the Defendants' limited insurance coverage, Plaintiffs are understandably concerned about their ability to collect a judgment; (4) the Proposed Settlement offers a substantial and quantifiable benefit to the Class Members; (5) the parties conducted extensive investigation and discovery prior to settlement negotiations, indicating that they made an informed decision to settle; (6) Class Counsel has significant experience litigating ERISA class actions and/or other employment actions and believes that the settlement is fair, reasonable, and adequate under the circumstances; (7) no Class Member has objected to the Proposed Settlement; and (8) the record discloses no indicia of inadequate notice to the Class.

Finally, there is no indication that the Settlement is the product of collusion among the negotiating parties. Rather, the parties reached the Proposed Settlement after two days of mediation under the supervision of an experienced and neutral mediator, and subsequent negotiations between counsel with the aid of said mediator. These factors strongly suggest that the settlement agreement was reached through arm's length negotiations. For the aforementioned reasons, the Court GRANTS Plaintiffs' Motion for Final Approval of Class Action Settlement.

**B.  Motion for Award of Attorneys' Fees and Costs and Named Plaintiffs Incentive Award**

**1.  Attorneys' Fees**

"A lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). However, even where attorneys' fees and costs are authorized by law or the parties' agreement in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth, 654 F.3d at 941. "When assessing whether the percentage requested is reasonable, courts look to factors such as: (a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). Typically, the benchmark for attorneys' fees in the Ninth Circuit is 25% of the common fund. Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000); Vizcaino, 290 F.3d at 1047-48; Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). Alternatively, the Court has discretion to employ a lodestar method of calculation. In re Bluetooth, 654 F.3d at 942.

Here, the Court's review of each of the Vizcaino factors demonstrates that an award of 25% of the Settlement Amount is appropriate in these circumstances. Additionally, the Settlement Agreement itself provides that Defendants will not oppose Class Counsel's petition for fees up to 25% of the Settlement Amount. Feinberg Decl., Ex. 1 ¶ 5.1.1. Cross-checking the requested fee amount with the lodestar method, Class Counsel is requesting a 1.085 multiplier of their lodestar fees.[7] This is within the typical range, therefore the Court GRANTS Class Counsel's request for attorneys' fees. See Vizcaino, 290 F.3d at 1051 n.6 (noting that multipliers ranging from one to four are common).

---

[7] Class Counsel has submitted documentation detailing the number of hours billed and the rate at which different individuals were billing. See Fees & Costs Summary (dkt. 65-3 and dkt. 65-5).

7

### 2. Litigation Costs

Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class. In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996); see also Clark v. Am. Residential Servs., LLC, 175 Cal. App. 4th 785, 807 (Cal. Ct. App. 2009) (finding error where the district court "awarded costs greater than the maximum amount specified in the notice given to the class").

Here, Class Counsel requests $103,074.96 for the cost of "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses." Fee Mot. at 14. The Notice specified that Class Counsel's request for costs and expenses shall not exceed $150,000. See Tittle Decl., Ex. A at 4. Because the costs are reasonable and do not exceed the amount specified in the Notice to Class members, the Court GRANTS Class Counsel's request for reimbursement of litigation related costs and expenses.

### 3. Named Plaintiffs Incentive Awards

"Incentive awards are fairly typical in class action cases." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958 (9th Cir. 2009). It is within the discretion of the district court to evaluate incentive awards on an individual basis using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003) (internal quotations and citations omitted). In general, courts in the Ninth Circuit have found that $5,000 incentive payments are reasonable. See, e.g., Hopson v. Hanesbrands Inc., No. 08-0844, 2009 WL 928133, at *10 (N.D. Cal. 2009).

Class Counsel requests an incentive payment of $5,000 for only two of the 199 Class Members, both of whom provided information to Class Counsel, responded to discovery requests, produced relevant documents, prepared for depositions, and consulted with Class Counsel regarding litigation decisions. See Fee Mot. at 15; Third Feinberg Decl. (dkt. 65-1)

¶ 6; Donahoo Decl. (dkt. 65-4) ¶¶ 6-8. Additionally, the payments amount to less than 0.001% of the total settlement amount. See Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D. Cal. 2008) (citing approval of incentive payments ranging from 0.17% to 0.71% of the total settlement amount). Thus, the Court finds that Class Counsel's request for incentive payments are reasonable under the circumstances and GRANTS the request.

### C. Motion for Good Faith Settlement Approval and Indemnity and Contribution Bar Order

California Code of Civil Procedure sections 877 and 877.6 provide that a good faith determination "shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasor." Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal. 3d 488, 492-93 (Cal. 1985). The purpose of these sections is twofold: (1) to ensure equitable sharing of costs among the parties at fault, and (2) to encourage settlements. See id. at 494. Where individuals not participating in the settlement are barred from seeking contribution, good faith alone is not sufficient to satisfy the dual objectives of sections 877 and 877.6. Id. at 496-97 (quoting Commercial U. Ins. Co. v. Ford Motor Co., 640 F.2d 210, 213 (9th Cir. 1981). Rather, "dismissal must represent a settlement which is a good faith determination of [the settling tortfeasor's] relative liabilit[y]." Id. at 497 (quoting Commercial U. Ins., 640 F.2d at 213). In such cases, good faith turns on "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." Id. at 499. However, "[t]his is not to say that bad faith is 'established by a showing that a settling defendant paid less than his theoretical proportionate or fair share.'" Id. (quoting Dompeling v. Super. Ct. of Stanislaus, 117 Cal. App. 3d 798, 809 (Cal. Ct. App. 1981)).

Tech-Bilt suggests that a number of factors are relevant to the determination of good faith under section 877.6. 38 Cal. 3d at 499. Accordingly, the Court should consider (1) "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability," (2) "the amount paid in settlement," (3) "the allocation of settlement proceeds among plaintiffs," (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable at trial," (5) "the financial conditions and insurance policy

1 limits of settling defendants," and (6) "the existence of collusion, fraud, or tortious conduct
2 aimed to injure the interests of nonsettling defendants." Id.

3 Where a good faith settlement is contested, the party asserting the lack of good faith bears the burden of demonstrating "that the settlement is so far out of the ballpark in relation to [the Tech-Bilt] factors as to be inconsistent with the equitable objectives of the statute." Id. at 499-500 (internal quotations omitted). Nevertheless, the objecting non-settlor frequently does not possess sufficient factual information to carry its burden at the time of the hearing. See Grand Terrace v. Super. Ct. of San Bernardino, 192 Cal. App. 3d 1251, 1265 (Cal. Ct. App. 1987). In such cases, the party moving for the good faith determination must make an "evidentiary showing, through expert declarations or other means, that the proposed settlement is within the reasonable range permitted by the criterion of good faith." Mattco Forge, Inc. v. Arthur Young & Co., 38 Cal. App. 4th 1337, 1351 (Cal. Ct. App. 1995) (citing section 877.6 and Tech-Bilt, 38 Cal. 3d at 500).

The Court agrees with Defendants that the Motions for Preliminary and Final Approval "contain more than sufficient [factual] information about the settlement amount, how the settlement was achieved, the adversarial nature of the settlement, and why the settlement amount was appropriate in light of the claims[,] defenses[,] and potential recovery, to enable the Court to determine that the settlement is in good faith." Good Faith Reply at 5. Tech-Bilt itself suggests that the inquiry into a settling defendant's proportional fault is a precaution intended to make sure that the settling defendant is not attempting to shift liability to another non-settling tortfeasor. See Tech-Bilt, 38 Cal. 3d at 501-02 (finding that a settlement in which plaintiffs received nothing in return for dismissal of their action against defendants served only to cloak defendants with immunity from liability to joint tortfeasors). Here, it cannot be said that Plaintiffs received nothing—quite the contrary, the Class received over $5 million in settlement proceeds. Additionally, the Court finds no merit in the suggestion that Defendants are attempting to use the Settlement Agreement as a means of shifting liability to other potentially liable parties.

The Opposition has failed to proffer any evidence that suggests the Proposed Settlement represents a grossly disproportionate share of Defendants' potential liability. Rather, the Opposition casts mere speculation on the Defendants' good faith without providing any factual support to indicate a lack thereof. See id. at 500 (directing courts to base their good faith determinations on experience rather than mere speculation); see also L.C. Rudd & Son, Inc. v. Super. Ct. of Alameda, 52 Cal. App. 4th 742, 749-50 (Cal. Ct. App. 1997) (finding that a disproportionately low settlement is a threshold requirement for discovery of a settling defendant's financial resources). The Opposition avers that because the financial condition and insurance policy limits of each Defendant—particularly the Spears—have not been disclosed, the Court may not yet make a determination as to good faith. However, to the extent this information appears relevant, it has been provided to the Court. Defendants Reser and FSI have a $3 million insurance policy and Defendant FBTS has a $10 million insurance policy. See Feinberg Decl. ¶11. The Spears Defendants, however, have no insurance. See id.

Assuming arguendo that the Court did permit the Opposition to conduct limited discovery on the issue of the Spears' present financial condition and their contribution to the overall Settlement Amount, the Court's conclusion would not change. If discovery revealed that the Spears are insolvent, the Court would nevertheless find that the overall Settlement Agreement was reached in good faith in light of their lack of insurance. See TSI Seismic Tenant Space, Inc. v. Super. Ct. of San Diego, 149 Cal. App. 4th 159, 168 (Cal. Ct. App. 2007) (finding that where a settling defendant is insolvent or lacks insurance, there is no logical reason to deny a good faith motion, even if that defendant is paying far less than its proportional share of liability). Similarly, if discovery revealed that the Spears have ample wealth, yet contributed little or nothing towards the total Settlement Amount, the Court would remain unpersuaded that the Settlement as a whole is grossly disproportionate as to the settling Defendants' relative culpability. Given the availability of Reser, FSI, and FBTS's combined $13 million insurance coverage, the Court finds it unlikely that the Spears would contribute anything to the Settlement Amount regardless of their financial condition,

rendering the point moot. Accordingly, the Court GRANTS Defendants' Good Faith Motion.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Final Approval of Class Action Settlement, GRANTS Defendants' Motion for Award of Attorneys' Fees and Costs and Named Plaintiffs Incentive Award, and GRANTS Defendants' Motion for Good Faith Settlement Approval and Indemnity and Contribution Bar Order.

**IT IS SO ORDERED.**

Dated: February 19, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE